UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                            :
NEIL PERSH,                                 :
                            Plaintiff,      :
                                            :
            -against-                       :
                                            :
ALDO PETERSEN,                              :
                            Defendant.      :
                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __10/02/2015__

15 Civ. 1414 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

This action arises from an alleged breach of an oral agreement. Plaintiff moves to disqualify Clayton Parker and the law firm K&L Gates as counsel for Defendant Aldo Petersen. For the following reasons, the motion is denied.

**BACKGROUND**

The facts below -- limited to allegations relevant to the motion to disqualify -- are taken from Plaintiff's Amended Complaint ("Complaint"), and submissions by the parties in connection with the motion.

The parties formed an entity called Liqtech USA, a Delaware corporation, for the purpose of acquiring the shares in three companies: Liqtech A/S, Liqtech International DK and Liqtech Delaware. In June 2011, Liqtech USA contracted to purchase shares and equity interests in the three target companies.

To raise the funds required for this purchase, Liqtech USA sold some of its common stock to other individuals and entities. One such individual -- David Nemelka -- proposed purchasing Liqtech USA common stock for cash and a promissory note in the principal amount

of $4 million USD.  Liqtech USA, however, required Nemelka to issue this promissory note denominated in Danish Kroner.

To assuage Nemelka's concerns about exchange rate fluctuations between the Danish Kroner and U.S. Dollars, the parties here, Persh and Petersen, devised a solution -- they would assume the risks and benefits of the currency fluctuation.  In August 2011, the parties and Nemelka exchanged drafts of a written agreement reflecting this concept.  Persh and Nemelka ultimately signed the written agreement, but Petersen did not.  The Complaint alleges that the parties and Nemelka "came to an unequivocal oral agreement on the material terms" contained in the draft currency agreement in August 2011 (the "Oral Agreement").

The acquisitions were completed in August 2011.  After the acquisition, Liqtech International was the ultimate parent company of Liqtech USA and the three Liqtech target companies.  Defendant is Chairman of the Board of Liqtech International, and Nemelka is a Board member, according to the company's 2012 Form 10-K.  In December 2011, Liqtech International, Inc. retained Clayton Parker, a transactional partner at K&L Gates, "to provide non-adverse corporate advice to it . . . [and] to prepare the documents necessary for Liqtech International, Inc. to be listed on the NASDAQ, and prepare SEC filings for it."  Parker states that K&L Gates has never "provided any legal advice or services" to Plaintiff.

Between November 24, 2014 and January 6, 2015, Plaintiff's attorney, Neal Brickman, communicated with Parker to attempt to resolve the claim at issue in the lawsuit -- i.e., to obtain payment from Defendant allegedly due to Plaintiff under the Oral Agreement.  Parker asserts that before November 24, 2014, neither he nor his firm provided any legal advice concerning payment to Persh under the Oral Agreement.  On November 24, 2014, Plaintiff's attorney sent Defendant a demand letter, which Defendant forwarded to Parker.  Plaintiff's attorney requested

affidavits from Nemelka and Defendant "attesting to the proposition that no money has been paid to Mr. Petersen on account of the [Oral] Agreement."  In his correspondence with Parker, Plaintiff's attorney stated that, if Defendant did not transfer monies owed pursuant to the Oral Agreement, Plaintiff would have "no alternative but to commence suit."

On December 16, 2014, Parker sent Plaintiff's attorney a copy of a bank document showing payment from Liqtech A/S to Laksya Ventures, Neil Persh, totalling $357,516.38.  The Complaint alleges that this payment was unrelated to the Oral Agreement.  After receiving the bank document, Plaintiff's attorney asked Parker to confirm that:

> [Y]our -- and more importantly, your client's -- understanding that the wire confirmation that [Parker sent Plaintiff's attorney] earlier this week was evidence of the payment of money due under the Currency Exchange Agreement, that Mr. Petersen received an identical amount, and that those monies were intended to compensate Persh and Peterson [sic] for their having taken the currency risk on behalf of Mr. Nemelka.

Parker replied five minutes later that he "confirm[ed] that the summary in [Plaintiff's attorney's] email is correct."  Parker states that, when he made the confirmation, he "did not have personal knowledge of the events described . . ."

Plaintiff's attorney replied:

> It makes sense to me to include your confirmation (see the e-mails below) in an expanded affidavit from Mr. Peterson.  [sic]  Then, we may be able to put this matter to bed.  The quicker you can get me this new affidavit, the quicker we may be able to devote our attentions to more productive endeavors.

On December 23, 2014, Plaintiff's attorney e-mailed Parker to ask if he was "able to provide [him] with Mr. Peterson's [sic] expanded affidavit" and stating that he was "attempting to close this matter prior to the end of the year."  According to the Complaint, on January 6, 2015, Parker's assistant sent Plaintiff's attorney an affidavit of Petersen, which stated, "The wire

confirmation sent to [Plaintiff's counsel] by Clayton Parker was evidence of payment to Neil

Persh and I, Aldo Petersen, received an identical amount."

On January 7, 2015, Plaintiff filed this action in state court.  On February 26, 2015,

Defendant removed the action to this Court.  The Complaint alleges that in or around June 2012,

Defendant, but not Plaintiff, received payment under the Oral Agreement and failed to pay any

of the proceeds to Plaintiff.  The Complaint seeks as damages Plaintiff's share of the proceeds

under the Oral Agreement, and asserts alternative theories for the same relief in the event the

agreement is found to be unenforceable.  K&L Gates, by its attorney Lani A. Adler, represents

Defendant in this action.  Plaintiff seeks to disqualify K&L Gates as defense counsel.

**STANDARD**

A motion to disqualify counsel falls within the discretion of this Court.  *Purgess v.

Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("The disqualification of an attorney in order to

forestall violation of ethical principles is a matter committed to the sound discretion of the

district court.").  "Federal courts adjudicating questions involving the ethics of attorneys look to

the local rules of professional conduct for guidance."  *National Credit Union Admin. Bd. v. RBS

Securities, Inc.*, No. 13 Civ. 6726, 2014 WL 1257775, at *2 (S.D.N.Y.March 27, 2014) (citing

*Hempstead Video, Inc.*, *v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005); *Silver

Chrystler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 753 (2d Cir. 1975)).  Although

"decisions on disqualification motions often benefit from guidance offered by the American Bar

Association (ABA) and state disciplinary rules, such rules merely provide general guidance and

not every violation of a disciplinary rule will necessarily lead to disqualification."  *Hempstead

Video, Inc.* 409 F.3d at 132 (citations omitted).

"In deciding whether to disqualify an attorney, a district court must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (internal quotation marks and citation omitted). Courts in this Circuit show "considerable reluctance to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice" and "disqualification motions are often interposed for tactical reasons [a]nd even when made in the best of faith . . . inevitably cause delay." *Bd. of Educ.  v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citation omitted). Accordingly, "unless an attorney's conduct tends to 'taint the underlying trial,' . . . courts should be quite hesitant to disqualify an attorney." *Id*.

## DISCUSSION

### A.     The Witness-Advocate Rule

Courts consider disqualification under the witness-advocate rule when a movant alleges that an advocate or a member of an advocate's law firm will be called as a witness. Parker and K&L Gates are not subject to disqualification based on the witness-advocate rule.

Rule 3.7(a) of the New York Rules of Professional Conduct provides that a lawyer cannot act as an advocate before a court in a matter in which "the lawyer is likely to be a witness on a significant issue of fact." The rule is inapplicable because Parker is not an advocate within the meaning of the rule.

Rule 3.7(b) of the New York Rules of Professional Conduct may call for disqualification of an attorney's law firm in a proceeding in which an attorney is likely to be a witness but does not act as trial counsel. That rule states that a lawyer cannot advocate before a court in a matter in which "another lawyer in the lawyer's firm is likely to be called as a witness on a significant

issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client."  Disqualification of a witness' law firm by imputation is disfavored and "should be ordered sparingly . . . and only when the concerns motivating the rule are at their most acute." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2005).  To "limit the tactical misuse of the witness-advocate rule," the movant must show "by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result."  *Id.* at 178-79 (brackets in original).

In addition to showing prejudice, "no disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary" because disqualification is "highly prejudicial to the non-movant."  *Fenn & Fenn, Inc. v. MacQueen*, No. 88 Civ. 4196, 1989 WL 58041, at *8 (S.D.N.Y. May 19. 1989); *see also Purgess*, 33 F.3d at 144 ("Disqualification may be required only when it is likely that the testimony to be given by [counsel] is necessary." (citation omitted)).

Plaintiff argues that K&L Gates must be disqualified as counsel because its partner, Parker, is a necessary witness on the issues of (1) Defendant's assent to the terms of the Oral Agreement, and (2) the extent of the consideration that Defendant received under that agreement. Plaintiff seems to focus on the December 18, 2014 email exchange between Parker and Plaintiff's counsel, and particularly on Parker's "confirmation" of the statement of Plaintiff's attorney.  To the extent that Parker's testimony is admissible, Plaintiff has not shown that the testimony is necessary and prejudicial to Defendant.

Turning first to the threshold issue of admissibility, any confidential communications Parker may have had with his client, the Defendant, about the Oral Agreement that may have informed his statements in the December 18 email exchange are privileged attorney-client

6

communications and therefore inadmissible.  *Brennan Center for Justice at New York University School of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012) ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance.") (citing *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011), *cert. denied*, --- U.S. -----, 132 S. Ct. 533 (2011)).

Parker's communications with Plaintiff's counsel from November until early January 2014 -- including the December 18, 2014, emails -- are inadmissible under Rule 408 as statements made in the course of settlement negotiations.  *See* Fed. R. Evid. 408(a)(2) (prohibiting admission of "a statement made during compromise negotiations" to prove the "validity or amount of a disputed claim").  "[W]here a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408."  *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992); *see also Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (holding that district court did not abuse its discretion by excluding evidence of offer predating commencement of litigation under Rule 408).  The communications at issue here concerned a disputed claim; were between counsel; occurred after Plaintiff's attorney had explicitly threatened litigation; and immediately preceded the filing of this action.  In these communications, Plaintiff's attorney expressed a desire that he and Parker would "put this matter to bed" and "be able to devote our attentions to more productive endeavors."  Nothing about the communications suggest that they are evidence of bias or prejudice within the exception to Rule 408.  See Fed. R. Evid. 408(b) ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice . . ..").

Instead, Plaintiff seeks to use Parker's "confirmation" to prove the validity of his claim -- that Petersen assented to and received payment under the Oral Agreement.  The communications between Parker and Plaintiff's attorney in late 2014 occurred in the course of settlement negotiations and are inadmissible under Rule 408.

To the extent that Parker's testimony is admissible, it is unnecessary.  He has no first-hand knowledge of Defendant's alleged assent to the Oral Agreement or any payments made under that agreement.  He had not even been retained when Plaintiff alleges the Oral Agreement was entered.  *See Ardesmasov v. Citibank, N.A.*, 14 F. Supp. 3d 39, 54, 56 (D. Conn. 2014) (attorney is not a necessary witness where "he has no direct knowledge of the underlying facts relating to the causes of action;" "[w]here attorneys have obtained facts from others in their capacity as counsel, courts have declined to disqualify them as required to testify.").

Finally, Plaintiff has not shown by clear and convincing evidence that Parker's testimony, even if it were admissible, is prejudicial and sufficiently so that the integrity of the judicial system will suffer as a result.  In the context of disqualification by imputation, prejudicial testimony is "testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'"  *Murray*, 583 F.3d at 178 (citing *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).  The rule seeks to protect the testifying lawyer's client from the risk that trial counsel would be inhibited in attacking the credibility of her testifying colleague.  *See Nakasian v. Incontrade, Inc.*, 78 F.R.D. 229, 232 (S.D.N.Y. 1978).

According to his affidavit, Parker does not have personal knowledge of the events that Plaintiff's counsel described and Parker confirmed in the December 18, 2015, emails.  Parker states that his confirmation was based on his understanding at the time.  To the extent that his

understanding is contrary to what Defendant asserts at trial, Defendant's trial counsel need only show that Parker was mistaken, and not that he is lying. There is little risk that Ms. Adler as trial counsel would pull her punches in attacking her partner Mr. Parker, because an attack is unnecessary to neutralize his testimony. She merely needs to establish that Parker did not know the facts, which Parker has already conceded.

For all of these reasons, K&L Gates' continued representation poses no danger to the firm's ability to defend Petersen and does not compromise the integrity of the judicial system. The concerns motivating the lawyer-witness rule are decidedly not at their most acute and provide no basis for disqualification here.

### B. Conflict of Interest

K&L Gates cannot be disqualified for a conflict of interest because there is no conflict. Courts consider disqualification due to conflicts of interest where the movant alleges conflicting prior or concurrent representations undertaken by counsel against whom disqualification is sought. "[D]isqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764–65 (2d Cir. 1990) (citation and alterations omitted). Rule 1.7 of the New York Rules of Professional Conduct provides, in relevant part, that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." N.Y. R. Prof'l Conduct § 1.7. Vague and conclusory allegations are insufficient to meet the burden required to disqualify counsel. *Bulkmatic Transport Co., Inc. v. Pappas*, No. 99 Civ.

12070, 2001 WL 504841, at *2 (S.D.N.Y. May 11, 2001) (denying a motion to disqualify where the allegations were "too vague and conclusory to meet the heightened burden of proof required for a motion to disqualify").

K&L Gates represents Petersen in this action, and represents Liqtech International, Inc. in corporate matters. Liqtech International, Inc. is not a party to this lawsuit, and the two clients are not otherwise adverse. Consequently, there is no conflict that might warrant disqualification. *See Id*. at *2 (denying disqualification of law firm holding that there was "no risk of trial taint in this case from an actual conflict of interest" because law firm was not representing client in action against other client).

Plaintiff asserts that K&L Gates will represent Defendant's and Liqtech International, Inc.'s differing interests without ever saying what those interests actually are, much less how they conflict. Plaintiff has not demonstrated that K&L Gates' representation of Liqtech International, Inc. will undermine its representation of Defendant, nor has it shown that K&L Gates is potentially positioned to use any privileged information regarding Plaintiff through prior representation, as the firm has not represented Plaintiff.

Plaintiff's only specific argument is that a conflict exists because the Liqtech 2012 Form 10K, which K&L Gates allegedly prepared on behalf of Liqtech, implies facts that are inconsistent with Defendant's presumed position in this case. This argument is unavailing because it is speculative, both as to what it implies about the June 2011 wire transfer at issue, and Defendant's presumed contrary interpretation. Plaintiffs have failed to carry their burden of showing a conflict of interest that would warrant disqualification.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to disqualify is DENIED.  The Clerk is

directed to close the motion at Docket No. 16.

SO ORDERED.

Dated: October 2, 2015
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**