```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
NEIL PERSH,                                                   :
                              Plaintiff,                      :
                                                              :
                    -against-                                 :
                                                              :
                                                              :
ALDO PETERSEN,                                                :
                              Defendant.                      :
                                                              :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/13/2016

15 Civ. 1414 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

This action arises from an alleged breach of an oral agreement among the parties to this action and a third person. Defendant Aldo Petersen moves for summary judgment on Plaintiff Neil Persh's claim for breach of oral agreement, the only claim remaining in this action. In the alternative, Defendant also moves for summary judgment on the ground that the Court lacks personal jurisdiction over Defendant. Defendant's motion for summary judgment is denied.

## I.  BACKGROUND

The following facts are taken from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and the parties' submissions on this motion. For the purposes of this motion, all factual disputes are resolved in Plaintiff's favor, and all reasonable inferences are drawn in his favor as the non-moving party. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *Wright v. N.Y. State Dep't of Corr.*, No. 15-3168, 2016 WL 4056036, at *4 (2d Cir. July 29, 2016).

### A.  The Liqtech Acquisition

The parties formed an entity called Liqtech USA, a Delaware corporation, for the purpose of acquiring the shares of three companies: Liqtech A/S, Liqtech Int. DK and Liqtech Delaware (collectively, the "Liqtech Acquisition"). The parties met in New York City on multiple

occasions to discuss, negotiate and finalize the Liqtech Acquisition.  In June 2011, Liqtech USA contracted to purchase shares and equity interests in the three target companies.

As part of the transactions constituting the Liqtech Acquisition, Laksya Ventures, Inc. sold its shares of Liqtech A/S to Liqtech USA.  Laksya Ventures is owned by Persh.  Pursuant to this sale, Laksya Ventures received a promissory note from Liqtech USA in the amount of 2,192,200 Danish Kroner ("DKK") due June 30, 2012.  Liqtech A/S arranged for the payment of this amount, less deductions, to Persh in U. S. Dollars ("USD").  Liqtech A/S paid off the note with a payment of $357,516.38 USD on June 28, 2012.  According to Petersen, and supported by an affidavit of the Chief Financial Officer of LiqTech A/S, Petersen had similarly sold shares of Liqtech A/S, and received an identical payment of $357,516.38 USD on June 28, 2012, for his shares.

### B. The Currency Exchange Rate Agreement

To raise the funds required for the Liqtech Acquisition, Liqtech USA sold some of its own common stock to other individuals and entities.  David Nemelka, who is not a party to this action, agreed to provide a note for 19,500,000 DKK to pay certain shareholders of Liqtech A/S for their equity in that company.  Because Nemelka wanted to pay no more than $4,000,000 USD when his note came due on June 30, 2012, Nemelka and the parties in this action, Persh and Petersen, formed an oral currency exchange rate agreement (the "CERA") in August 2011, after discussing the CERA in New York.  Liqtech USA's New York attorney represented both Persh and Petersen as individuals in the transaction.

Under the terms of the CERA, Persh and Petersen would assume the risk of currency fluctuation as individuals.  If Nemelka paid more than $4,000,000 USD to satisfy the note he issued when the note came due, Persh and Petersen would pay Nemelka the difference between

2

$4,000,000 USD and the amount Nemelka paid to satisfy the note. If Nemelka paid less than $4,000,000 USD to satisfy the note when the note came due, Nemelka would pay Persh and Petersen the difference between the amount he paid to satisfy the note and $4,000,000 USD. Any payment owed by Nemelka to Persh and Petersen was to be split between Persh and Petersen in equal shares.

The economic terms of the CERA were reflected in a written agreement that Petersen never signed, but that Persh and Nemelka did sign. Defendant agrees with Plaintiff, only for purposes of this motion, that the CERA is an enforceable oral agreement. The unexecuted written agreement contained various non-economic provisions, such as choice of law; a forum selection clause that designated Utah as the forum and source of governing law for disputes arising from the agreement; and a provision waiving the parties' right to a jury trial. Persh testified at his deposition that the CERA and the unexecuted written agreement contained the same terms. Persh clarified in response to this motion that only the economic terms in the unexecuted written agreement were agreed to in the CERA. When asked about the CERA at his deposition, Petersen referenced only economic terms. Nothing in the record suggests that the parties agreed to the non-economic terms in the unexecuted written agreement.

The unexecuted written agreement provides in relevant part that "In the event the Nemelka Payment is less than $4,000,000, Nemelka shall pay to Peterson [sic] and Persh, jointly, in immediately available funds an amount equal to the difference between U.S. $4,000,000 and the Nemelka Payment." Persh interprets this provision to mean that any payment to Petersen and/or Persh is joint, and that Petersen and Persh must therefore share any payment from Nemelka.

3

C.     **The Note Comes Due**

When Nemelka's note matured, Nemelka was required to pay approximately $3,200,000 USD to satisfy the note, which he paid. Under the terms of the CERA, Nemelka owed Persh and Petersen together approximately $800,000 USD. The parties dispute whether Nemelka paid any part of this amount. Petersen and Persh both maintain that they did not receive any payment from Nemelka, but Persh believes that Petersen did receive some amount pursuant to a side deal that essentially cut him (Persh) out.

In a letter to Nemelka dated June 18, 2012, an attorney representing Persh, Jonathan Schechter, claimed Persh was owed $344,908.25 USD (presumably half of the total amount Nemelka owed) on June 30, 2012, pursuant to the unexecuted written currency agreement. Nemelka's attorney replied on June 25, 2012, that no written agreement was in force, and that no binding agreement compelled Nemelka to pay Persh or Petersen. Nemelka's attorney further stated that Nemelka had confirmed with Petersen that no written agreement had been executed or delivered, nor was any agreement in force. Persh agreed at his deposition that it was Nemelka's obligation, in the first instance, to pay Persh any amount due to Persh under the CERA. Persh further testified that he never sued Nemelka for breach of the CERA, nor did Persh seek discovery from Nemelka in this case.[1]

On November 24, 2014, Neal Brickman, representing Persh, e-mailed Petersen to demand payment of $400,000 USD under the CERA. Brickman stated that Persh had reason to believe that Petersen had been paid by Nemelka, and that Persh was entitled to half of the payment from Nemelka to Petersen. This demand letter was forwarded to Petersen's attorney,

---

[1] It is unclear why Persh did not sue Nemelka or seek discovery from him. When Persh was asked at his depositions why he had not sued Nemelka, Persh replied "I believe [it] was Aldo Peterson [sic] who had made a side bar deal."

4

Clayton Parker.  Between November and early January 2014, Parker and Brickman participated in settlement negotiations protected by Rule 408(a) of the Federal Rules of Evidence.  *Persh v. Petersen*, No. 15 Civ. 1414, 2015 WL 5773566 (S.D.N.Y. Oct. 2, 2015) (denying motion to disqualify Parker and the law firm K&L Gates as counsel for Defendant).  In the course of these discussions, on December 14, 2014, Parker (Petersen's attorney) provided Brickman (Persh's attorney) with a wire transfer receipt showing that on June 28, 2012, Liqtech A/S paid Laksya Ventures, Persh's company, $357,516.38 USD, which is the payment described above made as part of the Liqtech Acquisition, and unrelated to the CERA.

Petersen testified at his deposition that he mistakenly believed when the document was provided to Persh's attorney that this payment had been made to Persh in connection with the CERA, and that Petersen had received a like payment.  According to Petersen, he revised his view in the course of the litigation, when Petersen heard from Persh and Brickman that the payment was not related to the CERA.

Persh alleges that this testimony is not credible and that Petersen received payment of some amount from Nemelka as part of a "side deal" to exclude Persh from the benefits of the CERA.  The basis for Persh's belief is that Petersen, according to Persh, has struck similar deals in the past -- "document deals within where he's done sidebar deals, documented deals where he's had underhanded deals with other clients, his partners, that he has shortchanged, wire transfers made by me to his partners on unequitable terms . . . .  I had to make those payments based on his instruction.  He shortchanged them.  I have proof to that effect."  Persh's belief is further based on the fact that Petersen released to Nemelka the 7.2 million shares held in escrow pending Nemelka's payment on the note; Petersen's testimony of his mistaken belief about the June 28, 2012, payment;  and the inadmissible settlement negotiations.

Persh admitted in his deposition that he did not know of any specific side deal that Petersen and Nemelka had arranged, or any payment made by Nemelka to Petersen pursuant to the CERA.[2]

### D. The Instant Action

Persh commenced this action in New York state court in January 2015 by serving a summons with notice and filing the summons in New York state court. The action was timely removed to this Court on February 26, 2015. Persh filed his Complaint on March 31, 2015, which he amended as of right on June 16, 2015. Persh alleged six claims: breach of oral agreement, tortious interference with prospective business advantage, conversion, breach of fiduciary duty, negligent misrepresentation and fraud. By Order dated October 13, 2015, all claims were dismissed except for Persh's claim for breach of oral agreement. *Persh v. Petersen*, No. 15 Civ. 1414, 2015 WL 6393049 (S.D.N.Y. Oct. 22, 2015). The Amended Complaint does not allege that Petersen breached any provision of the CERA.

## II. STANDARD

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable

---

[2] In discovery, Persh sought to subpoena transaction records from Petersen's foreign bank accounts after Petersen stated that he received no payment from Nemelka. Persh in substance sought evidence of all deposits into Petersen's bank accounts for seven months in 2012, and then would have needed further discovery explaining the source and reason for any "suspicious" deposits. The request was further complicated by the accounts being in foreign banks in foreign countries. By Order dated October 27, 2015, Persh's request was denied. Persh's request was denied because the countervailing interests of Petersen's privacy rights and the logistical obstacles of enforcing the proposed subpoena outweighed the probative value of the bank information without further intrusive discovery.

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58-59 (2d Cir. 2016). Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Young*, 135 S. Ct. at 1347; *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009)). "Hearsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial." *Auz v. Century Carpet, Inc.*, No. 12 Civ. 417, 2014 WL 199511, at *1 fn.1 (S.D.N.Y. Jan. 17, 2014). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 248.

### III. DISCUSSION

Petersen moves for summary judgment on two grounds. First, he argues that no reasonable jury could conclude that Petersen breached the CERA. Second, he argues that this Court lacks personal jurisdiction over Petersen. For the following reasons, Petersen's motion for summary judgment is denied.

### A.       Petersen's Alleged Breach of the CERA

#### i.       The Terms of the CERA

The terms of the CERA are disputed in this action.  When deposed, Persh testified that the terms of the CERA and the terms of the unexecuted written agreement were the same. Petersen contends that the CERA therefore includes the choice of law and forum selection clauses contained in the unexecuted written agreement.  Persh's Rule 56.1 counter-statement states that only the economic terms of the unexecuted written agreement were included in the CERA.  To the extent that Persh's deposition testimony conflicts with his Rule 56.1 counter-statement, his Rule 56.1 counter-statement is binding.  *See Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 158 (2d Cir. 2014) ("[W]here Brown's deposition testimony appears to conflict with his Rule 56.1 statement of undisputed facts, . . . we rely on the facts in his Rule 56.1 statement . . . ."); *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) (holding that parties are bound by admissions to courts).  For the purposes of summary judgment, this dispute must be assumed to be resolved in the non-moving party's favor.  *See Young*, 135 S. Ct. at 1347; *Fireman's Fund Ins. Co.*, 822 F.3d at 631 n.12.  Therefore, for the purposes of this motion, the CERA contains only the economic terms of the unexecuted written agreement.[3]

#### ii.       A Reasonable Jury Could Conclude that Petersen Breached the CERA and that Persh Was Damaged

Under New York law, parties are free to contract orally.  *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1995).  The elements for breach of contract are: "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's

---

[3] Because the CERA does not contain the choice of law provision of the unexecuted written agreement, this Opinion applies New York law because the parties do.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues ... presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.").

breach of its contractual obligations, and damages resulting from the breach." *El–Nahal v. FA Mgmt., Inc.*, 5 N.Y.S.3d 201, 202 (2d Dep't 2015). For the purposes of this motion, Petersen stipulates to the existence of the CERA. By assuming the currency risk to induce Nemelka to issue the note in DKK, Persh performed his obligations under the CERA. The exchange rate when the note became due resulted in a required payment from Nemelka to "Persh and Peterson [sic] jointly."

"A contract is ambiguous when reasonable minds could differ as to its meaning." *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015). A reasonable mind could conclude that the word "jointly" means that any payment by Nemelka to Persh and/or Petersen is made to them jointly and therefore, on the alleged facts of this case, the CERA obligates Petersen to split with Persh any funds he received from Nemelka. A reasonable mind might also conclude that the agreement is devoid of any provision that obligates Petersen to pay Persh, and that Persh's remedy, if any, is entirely with Nemelka for non-payment. "Because facial ambiguity in a contract will require the factfinder to examine extrinsic evidence to determine the contract's effect, and because such extrinsic evidence is most often mixed, a court generally will not grant summary judgment on a contract claim when the operative language is ambiguous." *Id.* at 87-88.

In addition, a reasonable jury could conclude that Petersen did receive payment from Nemelka based on three pieces of evidence. First, Persh testified that Petersen released to Nemelka the 7.2 million shares held in escrow, and a reasonable jury could conclude that Petersen would not have done so without Nemelka having made all required payments, meaning not only his payment of approximately $3.2 million USD on the note, but also his required payment under the CERA. Second, Persh testified that he had personal, first-hand knowledge of

9

prior similar "side deals" arranged and executed by Petersen, and drawing the inference in favor of Persh, it is inferred that the prior side deals were sufficiently similar to the one alleged to suggest a pattern or practice. Third, and to a lesser extent, Petersen testified in substance that he believed in December 2014 that he had received payment from Nemelka with regard to the CERA, but later revised his view only as he became involved in the litigation. All of this evidence together could lead a reasonable jury to conclude that Nemelka paid Petersen and that Petersen breached the CERA by failing to divide those funds between himself and Persh.

Petersen contends that because Persh can show no breach of the CERA, Persh can similarly show no damages. That is not the case. The damages that Persh claims he suffered are general damages, as they flow directly from the alleged breach of the CERA, and "must be not merely speculative, possible, and imaginary, but they must be reasonably certain and such only as actually follow or may follow from the breach of the contract." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007). However, "[c]ertainty, as it pertains to general damages, refers to the fact of damage, not the amount." *Id.* at 110 (applying New York law to vacate district court's denial of claim for damages at bench trial). "For when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach." *Id.* Persh has adduced sufficient facts that a reasonable jury could conclude that he suffered damage from Petersen's alleged breach because Petersen failed to divide with Persh a sum of money paid to him by Nemelka. A reasonable jury could conclude that Persh was damaged by that failure and, even though the precise amount of that payment is not certain, summary judgment is inappropriate and denied.

### B.   Personal Jurisdiction

#### i.   Applicable Law

Unless a federal statute directs otherwise, "subject to limitations imposed by the United States Constitution, [courts] look to the law of the forum state to determine whether a federal district court has personal jurisdiction . . . ." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  New York law provides two bases for personal jurisdiction:  general (or all-purpose) jurisdiction pursuant to CPLR § 301, and specific (or case-linked) jurisdiction under CPLR § 302.  New York law provides for general jurisdiction over a defendant who "engaged in continuous, permanent, and substantial activity in New York."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000); *see also* CPLR § 301 ("A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.").  "Under the New York courts' interpretation of section 301, a non-domiciliary subjects h[im]self to personal jurisdiction in New York with respect to *any* cause of action if [he] is 'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [his] 'presence' in this jurisdiction.'"  *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983) (quoting *Simonson v. Int'l Bank*, 200 N.E.2d 427, 429 (N.Y. 1964)).  A non-domiciliary is not subject to Section 301 unless he is doing business in New York on his own behalf.  *See Laufer v. Ostrow*, 434 N.E.2d 692, 696 (N.Y. 1982) (individual "does not subject himself, individually, to the CPLR 301 jurisdiction of our courts…unless he is doing business in our State individually").

New York law confers specific jurisdiction over a non-domiciliary who "transacts any business within the state" that gives rise to a cause of action.  CPLR § 302(a)(1); *see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).  The "overriding

11

criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York, thereby invoking the benefits and protections of its laws." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotations and citations omitted). "A claim arises out of a defendant's transaction of business in New York when there exists a substantial nexus between the business transacted and the cause of action sued upon." *Agency Rent A Car*, 98 F.3d at 31 (internal quotations and citations omitted). "There is no bright-line test for determining whether the 'nexus' is present in a particular case. This inquiry is a fact specific one[.]" *Licci*, 673 F.3d at 67.

Contrary to Defendant's argument, New York law does not distinguish a defendant's actions taken in his personal capacity versus his "corporate" capacity. *See Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 164 (2d Cir. 2010) (CPLR § 302 "confers jurisdiction over individual corporate officers who supervise and control an infringing activity."); *Kreutter v. McFadden Oil Corp.*, 522 N.E. 40, 44–46 (N.Y. 1988) (regarding "CPLR 302, we determine that it is neither necessary nor desirable to adopt the fiduciary shield doctrine in New York.").

The exercise of personal jurisdiction must comport with state law, but must also be consistent with the due process requirements of the Fourteenth Amendment. *See Brown*, 814 F.3d at 625. To determine whether a finding of personal jurisdiction is consistent with the Constitution's due process requirements, the Court undertakes a "minimum contacts" inquiry and a "reasonableness" inquiry. *See id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)..

The minimum contacts inquiry requires the Court "to consider 'whether the defendant has

sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.'" *Licci*, 673 F.3d at 60 (quoting *Chloe*, 616 F.3d at 164). In order to find general jurisdiction consistent with the Constitution's due process requirements, a party must have contacts in New York that are "so continuous and systematic as to render [it] essentially at home in the forum." *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014); *see also Waldman v. Palestinian Liberation Org.*, No. 15-3135, 2016 WL 4537369, at *10 (2d Cir. Aug. 31, 2016) (noting that *Daimler*'s reasoning applies to general jurisdiction over individuals as well as corporations). Minimum contacts to support specific personal jurisdiction "exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci*, 732 F.3d at 170 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 127 (2d Cir. 2002)). Where a defendant's relevant conduct occurred entirely in another forum, "the fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) (internal quotations omitted). "Relevant factors at this second step of the analysis may include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief...." *Licci*, 732 F.3d at 170 (internal quotations and citations omitted). To defeat personal jurisdiction on due process grounds, a defendant "must present a compelling case that the

presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

When personal jurisdiction is challenged at the summary judgment stage and there has been no evidentiary hearing on the question of personal jurisdiction, the plaintiff must "include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *see Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). In a motion for summary judgment where the movant asserts that "undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought." *Dorchester*, 722 F.3d at 85. (quoting *Ball*, 902 F.2d at 197).

        ii.        **Plaintiff Has Adduced Evidence Sufficient to Support the Exercise of Personal Jurisdiction Over Petersen**

The Court does not have general jurisdiction over Petersen under New York law or the Constitution. Even drawing all reasonable inferences and resolving all factual disputes in favor of Persh, he has not adduced evidence sufficient to support a finding of general jurisdiction under New York law. Petersen did not engage in the "continuous, permanent, and substantial activity" necessary for general jurisdiction under the CPLR. *Wiwa*, 226 F.3d at 95. Multiple business trips and meetings in the forum state are insufficient to establish the continuous and permanent presence required for general jurisdiction under New York law. *See, e.g.*, *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043-46 & n.10 (2d Cir. 1990) (thirteen business trips over eighteen months insufficient to establish general jurisdiction under CPLR § 301). The exercise of general jurisdiction here also would be inconsistent with due process. *See Gucci Am, Inc.. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (declining to find general

jurisdiction where bank had branch offices in the forum but conducted only a small portion of its business in New York because it was not an "exceptional case" where the contacts "were so continuous and systematic as to render [it] essentially at home in the forum") (quoting *Daimler*, 134 S. Ct. at 761 & n.19)).

Persh has submitted evidence that, if credited, is sufficient to establish specific jurisdiction -- i.e., personal jurisdiction based under CPRL § 302(a). Persh's evidence shows that Petersen attended and participated in numerous meetings in New York City to structure and discuss the Liqtech Acquisition, and that Petersen and Persh met in New York to finalize the deal. Persh further states in an affidavit and in deposition testimony that at least one of these meetings concerned the creation of the CERA, that the Liqtech Acquisition hinged upon the CERA, and that they structured the overarching deal in New York. In addition, Persh provides evidence that Petersen engaged the services of a New York attorney to represent him personally in connection with the CERA.

If credited, this evidence is sufficient to establish personal jurisdiction over Petersen in New York. *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (on Fair Debt Collection Practices Act claim, "mailing one debt collection notice to [plaintiff], engaging in one debt collection phone call with [Plaintiff who was in New York], and mailing a summons and complaint to both Plaintiffs [in New York] are enough to establish personal jurisdiction under § 302(a)(1)."); *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102, 104 (2d Cir. 2006) (finding substantial nexus under CPLR § 302(a)(1) where plaintiff's decision to enter into contract was based in part on business plan sent by defendant to plaintiff's home in New York, negotiation of agreement involved plaintiff's New York-based attorney and defendant traveled to New York for several meetings related to contract); *Deutsche Bank Sec.*,

15

*Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1143 (N.Y. 2006) (finding that defendant should reasonably have expected to defend its actions in New York where defendant entered New York to transact business by pursuing negotiations with New York plaintiff that culminated in significant sale of bonds).

If credited, the evidence adduced by Persh would support a finding that the exercise of specific personal jurisdiction in this case complies with the Constitution's due process requirements.  First, as explained above, these facts show that Petersen "purposefully availed [him]self of the privilege of doing business in New York." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (internal quotations omitted).

Second, the exercise of personal jurisdiction is "reasonable under the circumstances of this particular case." *Bank Brussels*, 305 F.3d at 129.  Although "[t]here would, of course, be substantial burden imposed on [Defendant]" -- a resident of Denmark -- if [he] is forced to defend a suit in New York," "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Kernan*, 175 F.3d at 244; *see also Bank Brussels*, 305 F.3d at 129-30 (same).  Moreover, the State of New York has an interest in the case being adjudicated in New York in order to provide "effective means of redress for its residents," *Eades*, 799 F.3d at 169, and to ensure that "parties transacting business in New York comply with the law." *Levitin v. Sony Music Entm't*, No. 14 Civ. 4461, 2015 WL 1849900 at *9 (S.D.N.Y. Apr. 22, 2015).  Persh, a resident of New York County, also has a strong interest in obtaining convenient and effective relief in this District.

Because Plaintiff has adduced evidence sufficient to support a finding of personal jurisdiction over Petersen, summary judgment for lack of personal jurisdiction is denied.

### iii. An Evidentiary Hearing Is Necessary to Conclusively Determine Personal Jurisdiction and Promote Judicial Efficiency

The facts related to personal jurisdiction in this case are disputed. For example, Petersen states in a declaration that he did not attend any meeting in New York concerning either the CERA or the unexecuted written agreement. Although the factual disputes are resolved in Persh's favor in resolving this motion, he eventually is responsible for establishing that the Court has jurisdiction over Petersen by a preponderance of the evidence. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). As discovery and motion practice are complete, that eventual time is now. A court can require proof of personal jurisdiction at either a pretrial evidentiary hearing or at trial. *See id.* If adjudication of the jurisdictional issue will require factual findings reserved for trial, a court may hold a hearing for the purpose of making a preliminary finding of jurisdiction, subject to revision at trial, or may proceed directly to trial for findings of jurisdictional facts by the trier of fact. *Dorchester*, 722 F.3d at 87. Because it appears that the jurisdictional question here can be decided without adjudicating issues reserved for trial, and because it seems appropriate and promotes judicial efficiency to resolve the jurisdictional issue before requiring Petersen to defend at a full blown trial, an evidentiary hearing to determine personal jurisdiction will be scheduled by separate order.

### IV. CONCLUSION

For the foregoing reasons, Defendant Petersen's motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to close the motion at Docket No. 101. A written order will follow to set a pretrial evidentiary hearing on the question of personal jurisdiction.

Dated: September 13, 2016
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE