```
UNITED STATES DISTRICT COURT                              USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                             DOCUMENT
------------------------------------------------------- X ELECTRONICALLY FILED
                                                        : DOC #:_____
NEIL PERSH,                                             : DATE FILED: 5/5/2017
                                        Plaintiff,      :
                                                        :      15 Civ. 1414 (LGS)
                -against-                               :
                                                        :      OPINION AND ORDER
ALDO PETERSEN,                                          :
                                        Defendant.      :
------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Neil Persh brings this action against Defendant Aldo Petersen for breach of an oral agreement. For the following reasons, and following an evidentiary hearing, the Court determines that it lacks personal jurisdiction over Petersen.

## I. BACKGROUND

The facts of this case are set out in detail in *Persh v. Petersen*, 15 Civ. 1414, 2016 WL 4766338 (S.D.N.Y. Sept. 13, 2016). As is relevant here, Persh alleges that he, Petersen and David Nemelka entered into an oral currency exchange rate agreement ("CERA") in order to induce Nemelka to invest in the acquisition of a Danish company, LiqTech A/S ("LiqTech Denmark").

Persh sued Petersen, alleging that Petersen had breached the oral CERA. Petersen moved for summary judgment, asserting in part that the Court lacks personal jurisdiction over him. The Court held that it lacks general personal jurisdiction over Petersen, but denied Petersen's motion with respect to specific jurisdiction because Persh had included an averment of facts at summary judgment that would suffice to establish jurisdiction over Petersen if credited by the trier of fact. On October 20, 2016, an evidentiary hearing was held to resolve that factual issue. Three

witnesses testified at the evidentiary hearing: Petersen, Persh and attorney George Lander, who represented LiqTech USA in the transaction.

Petersen testified under oath that he is a Danish citizen and resident, with no home in the United States and no bank account or tax obligations in New York. Petersen further testified that he attended meetings in Copenhagen, Miami and Minneapolis to structure the LiqTech acquisition, after which Lander was hired by LiqTech Denmark to facilitate the deal. Petersen initially testified that he attended one meeting in New York to discuss the deal's overall structure following the meeting in Miami, and spent two days in New York to finalize the deal. He later stated that he attended only the closing in New York. Petersen denied that he had entered into any oral CERA and averred that he did not attend any meetings in New York at which a CERA was negotiated or discussed. He likewise denied that he had used a New York telephone number to discuss a CERA. Petersen further denied that Lander had ever represented him personally in connection with the LiqTech acquisition or a CERA, and denied talking to Lander about a CERA.

In contrast, Persh testified under oath that he met Petersen and Lander in New York between fifteen and twenty-five times to discuss the LiqTech transaction, including a meeting at the Hyatt Hotel on 57th Street. Later in his testimony, Persh stated that he was conservative in his initial estimate and that he and Petersen likely had met in New York more than fifty times. Persh further testified that he and Petersen negotiated a CERA with Lander's help, and that Petersen gave Lander authority to deal with Nemelka's counsel in handling the CERA.

Lander testified under oath as follows: he is a New York attorney. To facilitate the acquisition, Lander formed LiqTech USA at the direction of Petersen and Persh who, directly or through their affiliates, were initially the sole shareholders of LiqTech USA. Lander represented

LiqTech USA in connection with the transaction, and his retainer agreement was with LiqTech USA.  Lander met Petersen and Persh at his office in New York approximately ten times to discuss the acquisition, and met Petersen once or twice without Persh to do the same.  He discussed a CERA -- i.e., that Persh and Petersen would take the currency risk with respect to Nemelka's investment -- with both Persh and Petersen in New York at or near the closing of the deal.  Persh and Petersen both directed Lander to work out an agreement with Nemelka's attorney regarding a CERA, "[b]asically draft it, send it to his attorney, negotiate it, etc."  Lander negotiated a written CERA with Nemelka's attorney, which Persh and Nemelka signed but Petersen did not.  Lander did not bill separately or have a separate retainer agreement for the work on the CERA.  Following the Liqtech acquisition, Lander continued to work with Persh on other deals for which he was compensated by Persh, including a deal "a couple months" prior to the evidentiary hearing, but did not continue to work with Petersen.  In connection with this action, Lander signed an affidavit prepared by Persh's attorney that he suspected could be used in a lawsuit against Petersen.

In addition to witness testimony, Persh submitted into evidence (1) notes written by Petersen on Hyatt stationery that contains no address or other identifying information, which refer to details of the LiqTech acquisition, and (2) Lander's invoice to LiqTech USA, to the attention of Persh and Petersen.

Petersen submitted into evidence (1) a copy of a payment from LiqTech Denmark to Persh's company; (2) the agreement and plan of merger for the LiqTech transaction, which was signed by Persh and not Petersen on behalf of LiqTech USA; (3) a 2009 opinion of the First Department -- Appellate Division suspending Lander's license to practice law; (4) a print-out from the New York State Unified Court System website stating that Lander's license was still

suspended as of the date of the evidentiary hearing; (5) a sworn affidavit, drafted by Persh's attorney and signed by Lander, asserting that Petersen intended to be bound by the CERA, and (6) a transcript of Persh's prior deposition testimony.

Following the evidentiary hearing, the parties submitted written closing arguments on November 18, 2016.

## II. LEGAL STANDARD

When personal jurisdiction is contested prior to trial, district courts may decide to hold a pre-trial evidentiary hearing to resolve the issue. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). If an evidentiary hearing is held, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant by a preponderance of the evidence. *See id.*; *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013).

To establish specific jurisdiction in New York over a non-domiciled defendant, a plaintiff must demonstrate that the defendant "transacts any business within the state" that gives rise to a cause of action. CPLR § 302(a)(1); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (federal district courts generally look to the law of the forum state to determine whether they have personal jurisdiction over parties). The "overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within New York, thereby invoking the benefits and protections of its laws." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks and citations omitted). "A claim arises out of a defendant's transaction of business in New York when there exists a substantial nexus between the business transacted and the cause of action sued upon." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) (internal quotation marks and

4

citations omitted). "There is no bright-line test for determining whether the 'nexus' is present in a particular case. This inquiry is a fact specific one . . . ." *Licci*, 673 F.3d at 67.

The exercise of specific jurisdiction must also be consistent with the due process requirements of the Fourteenth Amendment, which mandate that courts undertake a "minimum contacts" inquiry and a "reasonableness" inquiry. *Licci*, 673 F.3d at 60; *see Brown*, 814 F.3d at 625. The minimum contacts inquiry requires courts "to consider whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Licci*, 673 F.3d at 60. Minimum contacts sufficient to support specific jurisdiction "exist where the defendant purposefully availed [him]self of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). "Relevant factors at this second step of the analysis may include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief. . . ." *Licci*, 732 F.3d at 170 (internal quotation marks and citations omitted). To defeat personal jurisdiction on due process grounds, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

### III. DISCUSSION

Persh failed to prove by a preponderance of the evidence that this Court has specific

personal jurisdiction over Petersen. To establish personal jurisdiction over Petersen for breach of an oral CERA, Persh must prove by a preponderance of the evidence that there was a "substantial nexus" between business that Petersen transacted in New York and the breach. *See, e.g.*, *Agency Rent A Car*, 98 F.3d at 31 (requiring a substantial nexus between business transacted in New York and cause of action sued upon).

Persh has not met his burden of proving that Petersen transacted business in New York pertaining to an oral CERA. First, in light of the starkly contradictory and sometimes evasive statements by all three witnesses, the Court's observations of the witnesses' tone and demeanor while answering questions, the parties' self interest in the outcome of the proceeding and Lander's apparent bias, the Court did not find not find any witness testimony to be fully credible. Second, none of the exhibits ties Petersen to New York in connection with the oral CERA. On this record, Persh has sustained his burden of proving that this Court has specific personal jurisdiction over Petersen.

Petersen testified that he attended at most two meetings in New York pertaining to the LiqTech acquisition as a whole, and none related to any CERA. Persh first testified that Petersen attended between fifteen and twenty-five meetings in New York pertaining to the acquisition, and later amended that number to upwards of fifty meetings. Though Persh testified that he met with Petersen in New York multiple times, Persh did not testify that they discussed the CERA at any of these meetings.

Lander testified that he met with Petersen at least ten times in New York, and that at one such meeting, Persh and Petersen said they would assume Nemelka's currency risk and directed Lander to negotiate an agreement to that effect with Nemelka's attorney, which Lander did. If the Court credited this testimony and concluded that Petersen in effect orally agreed to the

6

CERA at this meeting, that finding might be sufficient as a basis for specific jurisdiction. However, the Court does not credit this testimony because of Landers' apparent bias in favor of Persh; the lack of any corroborating evidence in the form of testimony, timesheets or other documents; the fuzziness of Landers' memory as to the details of meetings; and his demeanor on the witness stand. Based on the insufficiency of the evidence, Persh has failed to sustain his burden of proving facts that would support the exercise of specific personal jurisdiction over Petersen.

## IV. CONCLUSION

For the foregoing reasons, the Court lacks personal jurisdiction over Defendant Petersen. Consequently, the case is dismissed.

The Clerk of Court is respectfully directed to close this case.

Dated: May 5, 2017
　　　New York, NY

　　　　　　　　　　　　　　　　　　　LORNA G. SCHOFIELD
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE